UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

UNITED STATES OF AMERICA        :
                                :
      v.                        :        No. 5:16-cr-00233
                                :
ELPIDIO ABREU                   :
_____

**O P I N I O N**
**Motion for Compassionate Release, ECF No. 71 - Denied**

**Joseph F. Leeson, Jr.**                                         **May 11, 2021**
**United States District Judge**

I.   **INTRODUCTION**

Defendant Elpidio Abreu has served approximately forty-six (46) months of a 120-month sentence for conspiracy to possess with intent to distribute cocaine and to launder monetary instruments. Abreu has filed a motion for compassionate relief pursuant to 18 U.S.C. § 3582(c)(1)(A) due to the risks presented by the coronavirus pandemic in light of his medical conditions. The Government opposes release. For the reasons set forth below and after consideration of the factors set forth in 18 U.S.C. § 3553(a), the motion is denied.

II.  **BACKGROUND**

On June 8, 2016, an Indictment was filed against Abreu charging him with conspiracy to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 846; possession with intent to distribute more than 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A); and conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(a)(2)(A). These charges arose from conduct that is alleged to have occurred between December 1, 2014, and January 27, 2015.

Abreu pled guilty to all charges and, on April 7, 2017, was sentenced to a total term of imprisonment of 120 months. This sentence was in the middle of the Sentencing Guidelines[1] range of 108 to 135 months imprisonment.

On June 29, 2020, Abreu filed a letter-motion for immediate release to home confinement based on the conditions at FCI[2]-Fort Dix as they related to the coronavirus. *See* ECF No. 68. The Government filed a response to the motion asserting that it should be denied as unexhausted. *See* ECF No. 69. By Order dated August 21, 2020, this Court dismissed the motion with prejudice to the extent Abreu sought release to home confinement pursuant to the CARES Act,[3] and, to the extent it sought compassionate release under 18 U.S.C § 3582(c)(1)(A)(i), dismissed the motion without prejudice for failure to exhaust. *See* ECF No. 70.

On February 28, 2021, Abreu filed the instant motion for compassionate relief pursuant to 18 U.S.C. § 3582(c)(1)(A). *See* Mot., ECF No. 71.[4] Abreu again complains about the conditions at FCI- Fort Dix as they relate to the coronavirus. He further complains that in January 2021, he tested positive for COVID-19, although he has since recovered. Abreu asserts that his medical conditions, including overweight (body mass index ("BMI") of 29.0), hypermetropia, dermatitis, high cholesterol (HDL), high rate of hemoglobin AlC (increased risk for diabetes), a high rate of Mean Platelet Volume (MPV), and lower back pain exacerbate his risks from COVID-19.

---

[1] Abreu, who was born on May 8, 1982, had prior state convictions for recklessly endangering another person in 2012/2013 and receiving stolen property in 2014. Abreu's supervision on the earlier case expired on or about May 28, 2017.
[2] Federal Correctional Institution ("FCI")
[3] Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281 (2020)
[4] Although Abreu states that the motion is an "addendum" to the prior motion, it is in fact a new motion.

The Government opposes Abreu's release or a reduction in sentence, arguing that Abreu's medical condition is not sufficiently serious according to CDC[5] guidance. *See* Resp., ECF No. 72. The Government also argues that Abreu, who has served less than half of his sentence, was engaged in conduct that presented a significant danger to the community and that a reduction of sentence would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment as provided for in 18 U.S.C. § 3553(a). *See id.*

Additionally, the Government states that since the coronavirus pandemic began, the BOP has made extensive changes to its operations to limit the spread of the virus. *See* Resp. 4-7. The BOP's "action plan" was prepared over many years and refined in early 2020 in consultation with the CDC and WHO.[6] *See id.*; BOP, Updates to BOP COVID-19 Action Plan: Inmate Movement (Mar. 19, 2020), https://www.bop.gov/resources/news/20200319_covid19_update.jsp (last visited April 13, 2021). The modified operations plan, *inter alia*, requires quarantine of newly admitted inmates, daily screening of facility staff, and screening of authorized private contractors, who are only permitted if performing essential services; suspends social visitation, while increasing inmates' telephone allowance; restricts inmate movement; and encourages social distancing, the wearing of face masks, and other steps to limit the spread of the virus. *See id.* As it relates to FCI-Fort Dix, where the Defendant is confined, the Government states that the institution houses 2,723 inmates. *See* Resp. 6. It explains that there was an early outbreak in May 2020, in which 36 inmates tested positive for COVID-19, but all inmates recovered and there were no deaths at the facility. There were additional and larger outbreaks beginning in October, ultimately affecting more than half of the institution. At the time the Response was

---

[5] Center for Disease Control ("CDC")
[6] World Health Organization ("WHO")

filed, there were fifty-four (54) reported cases in the institution and a total of 1,607 inmates, including Abreu, are deemed recovered. There has been one (1) COVID-related death.

In a supplemental response, the Government asserts that Abreu has now been vaccinated for COVID-19, eliminating any extraordinary condition presented by his risk factor. *See* Supp. Resp., ECF No. 76 (reporting that Abreu received the Pfizer vaccine on March 22 and April 12, 2021). The Government cites an FDA memorandum on the Pfizer vaccine providing that, "in extensive testing, the vaccine was 95% effective in preventing COVID-19 infection, including in participants with medical comorbidities associated with high risk of severe COVID-19 disease." *See id.* 5 (citing FDA Decision Memorandum, Pfizer – Dec. 11, 2020, https://www.fda.gov/media/144416/download).

## III. LEGAL STANDARD

The First Step Act empowers criminal defendants to request compassionate release with the court after first complying with the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A).[7] This section dictates that the defendant must first move for compassionate release with the BOP, which then has thirty days to consider the request. *See United States v. Raia*, 954 F.3d 594, 595-97 (3d Cir. 2020) (holding that the risks COVID-19 poses in the federal prison system do not excuse the exhaustion requirement).

Once a defendant satisfies the exhaustion requirement, the court may reduce a term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if it finds that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *See* 18

---

[7] Section 3582(c) is actually part of the Sentencing Reform Act of 1984 ("SRA"), but was amended by the First Step Act to provide prisoners a more direct route to court for their claims. *See United States v. Torres*, No. 18-414, 2020 WL 3498156, at *6 (E.D. Pa. June 29, 2020).

U.S.C. § 3582(c)(1)(A). *See also* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). Section 1B1.13 of the United States Sentencing Guidelines provides that the court may reduce a term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A), "if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines . . . extraordinary and compelling reasons warrant the reduction; . . . the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and [] the reduction is consistent with this policy statement." 18 U.S.C. Appx. § 1B1.13. *See also United States v. Williams*, No. 15-471-3, 2020 U.S. Dist. LEXIS 147664, at *10 (E.D. Pa. Aug. 17, 2020) ("In order to find compelling and extraordinary reasons, the policy statement additionally requires a court to find that a defendant is 'not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)'" (quoting 18 U.S.C. Appx. § 1B1.13(2))).

The Sentencing Commission has identified the medical condition of a defendant as an extraordinary and compelling reason if:

> (i) The defendant is suffering from a terminal illness . . . .
> (ii) The defendant is—
>   (I) suffering from a serious physical or medical condition,
>   (II) suffering from a serious functional or cognitive impairment, or
>   (III) experiencing deteriorating physical or mental health because of the aging process,
>   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

18 U.S.C. Appx. § 1B1.13, App. Note 1. However, "the COVID-19 pandemic does not warrant the release of every federal prisoner with health conditions that make them more susceptible to

the disease." *United States v. Santiago*, No. 15-280, 2020 U.S. Dist. LEXIS 124869, at *7 (E.D. Pa. July 15, 2020). Similarly, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."[8] *Raia*, 954 F.3d at 597.

Even if a defendant's medical condition is sufficiently severe, the court must still consider the 18 U.S.C. § 3553(a) sentencing factors and whether the defendant is a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g). *See United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) (holding that "the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit"). The § 3553(a) sentencing factors include, but are not limited to:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.
> (7) the need to provide restitution to any victims of the offense.

---

[8] *See* BOP, Updates to BOP COVID-19 Action Plan: Inmate Movement (Mar. 19, 2020), available at https://www.bop.gov/coronavirus/covid19_status.jsp (last visited April 13, 2021); *United States v. McLaughlin*, No. 17-121-2, 2021 U.S. Dist. LEXIS 29146, at *4-9 (E.D. Pa. Feb. 16, 2021) (summarizing the BOP's response to the coronavirus pandemic); Resp. 9-13.

18 U.S.C. § 3553(a). Section 3142(g) provides:

> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g).

## IV. ANALYSIS

Initially, the Court finds that Abreu has satisfied the exhaustion requirement by first seeking compassionate release with the BOP. *See* Resp. 2.

### A. Abreu's medical conditions do not present an extraordinary and compelling reason to reduce his sentence.

Abreu asserts that he is overweight (BMI of 29.0), suffers from hypermetropia, dermatitis, high cholesterol (HDL), a high rate of hemoglobin A1C (increased risk for diabetes), a high rate of Mean Platelet Volume (MPV), and lower back pain. *See* Mot. 2. The Government responds that none of these conditions are on the CDC's list of risk factors or present a chronic medical ailment. *See* Resp. 13. It argues the only condition that is even on the CDC's list of medical conditions that "might" increase risk is his mild obesity, with a BMI in the range between 25 and 30, but that is insufficient to warrant relief. *See id.* The Government further

7
051021

asserts that Abreu's recent vaccination for COVID-19 eliminates any extraordinary condition presented by his risk factor, *see* Supp. Resp., and that the BOP's efforts and the newest information regarding the COVID-19 infection rate at FCI- Fort Dix preclude a finding of an extraordinary and compelling reason for compassionate release. *See id.* n.2.

The BOP medical records confirm that Abreu is overweight, with a BMI between 25 kg/m2 and 30 kg/m2.[9] *See, e.g.* Records 10, ECF No. 73 (reflecting a BMI of 26.8 kg/m2 on July 15, 2019). Additionally, Abreu's medical records show that he has been on the cusp of diabetes.[10] *See* Records 27 (showing a hemoglobin A1C of 5.8 as of August 6, 2019); Records 72 (showing a hemoglobin A1C of 5.6 as of April 1, 2020). He has tested with an elevated cholesterol and high rate of Mean Platelet Volume, none of which have required treatment or impacted his daily living activities. *See, e.g.* Records 26-27, 42, 72. The records also show that the BOP has provided counseling to Abreu on managing his diet. *See, e.g.* Records 18. Abreu's medical records reflect that while he has a history of lower back pain, he has full range of motion and ambulates without difficulty. *See, e.g.* Records 48-49. The BOP manages his back pain with over-the-counter medications and monitors his condition. *See id.* 48-50, 79. Abreu's records indicate that his dermatitis and hypermetropia are also being managed by the BOP. *See, e.g.* Records 5-6, 10, 19, 44. Finally, the medical records reflect Abreu's diagnosis, treatment, and recovery from COVID-19. *See* Records 19, 32-42, 54-57, 68-69. At no point after testing positive for COVID-19 in December 2020 did Abreu complain of any COVID-related

---

[9] The CDC defines "overweight" as having a BMI > 25 kg/m2 but < 30 kg/m2; "obesity" as BMI ≥30 kg/m2 but < 40 kg/m2; and "severe obesity" as BMI of ≥40 kg/m2 and states that the "risk of severe COVID-19 illness increases sharply with elevated BMI." *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[10] A person with a hemoglobin A1C level between 5.7 and 6.4 is at an increased risk for diabetes and a level of greater than 6.4 is diabetes. *See* Records 27, 72.

symptoms. *See id.* Although Abreu alleges that he experienced COVID-19 symptoms in May 2020 despite a negative test, the medical records do not substantiate his allegations. *See generally* Records and Exs. to Mot., ECF No. 71.

As the Government correctly points out and an independent review of Abreu's medical records confirms, none of his medical conditions are actual risk factors under CDC guidelines. Of his medical conditions, Abreu's obesity is the only potential risk factor. *See United States v. Moldover*, No. 14-637, 2020 U.S. Dist. LEXIS 212264, at *21-22 (E.D. Pa. Nov. 13, 2020) (commenting that a BMI between 25-30 kg/m2 is "only a potential risk factor" and that"[d]istrict courts have routinely denied motions for compassionate release based on allegations of only potential COVID-19 risk factors"). Although Abreu's A1C levels place him at a greater risk for diabetes, the CDC does not list pre-diabetes as a COVID-19 risk factor. *See United States v. Washington*, No. 13-171-2, 2021 U.S. Dist. LEXIS 71018, at *13-14 (E.D. Pa. Apr. 13, 2021) ("The CDC does not list pre-diabetes as a COVID-19 risk factor."). *See also United States v. Harris*, No. 1:05-CR-481, 2020 U.S. Dist. LEXIS 132493, at *9 n.5 (M.D. Pa. July 27, 2020) (commenting that the inmate's additional medical conditions including hypermetropia are not on the CDC's list of conditions that render persons more vulnerable to serious complications from COVID-19). Even when his medical conditions are considered together, Abreu has not presented extraordinary and compelling reasons for compassionate release. *See United States v. Bell*, No. 09-672-1, 2021 U.S. Dist. LEXIS 87811, at *6 (E.D. Pa. May 6, 2021) (concluding that the inmate's obesity, high cholesterol, and high blood pressure did not warrant compassionate release); *United States v. Parnell*, No. 12-418-6, 2021 U.S. Dist. LEXIS 8111, at *9 (E.D. Pa. Jan. 15, 2021) (concluding that the inmate's "medical conditions, including obesity, bronchial asthma, hypertension, and pre-diabetes, do not present extraordinary and compelling reasons for

his release"); *United States v. Morales-Ortiz*, No. 11-143, 2021 U.S. Dist. LEXIS 2620, at *3, 12-13 (E.D. Pa. Jan. 7, 2021) (concluding that the 61-year-old inmate's obesity, high blood pressure, cholesterol, back injury (which was operated on), blood circulation issues, arthritis, poor eye sight, and sleep disorder did not present extraordinary and compelling reasons for his compassionate release").

Abreu's COVID-19 vaccination reduces the risks presented by COVID-19 and further militates against a finding of extraordinary and compelling reasons for his release. *See United States v. Hannigan*, No. 19-373, 2021 U.S. Dist. LEXIS 77967, at *16 (E.D. Pa. Apr. 22, 2021) (holding that even where the inmate's medical conditions would have presented an extraordinary and compelling reason for release, his risk was significantly reduced by his COVID-19 vaccination so as to render the conditions "not sufficiently extraordinary and compelling to warrant compassionate release"); *United States v. Roper*, No. 16-335, 2021 U.S. Dist. LEXIS 47704, at *10-11 (E.D. Pa. Mar. 15, 2021) (concluding that the inmate's inoculation against COVID-19 substantially reduces the risk of developing severe illness from COVID-19 due to his hypertension and obesity). Notably too, there is no indication that Abreu's medical conditions are not being appropriately managed by the BOP or that he is unable to engage in normal activities of daily living. *See United States v. Ramsey*, No. 2:14-cr-00296, 2021 U.S. Dist. LEXIS 26959, at *12 (E.D. Pa. Feb. 12, 2021) (observing that the inmate's "conditions have been adequately managed during his incarceration, he is able to partake in normal activities of daily life, and most importantly, he is able to provide self-care [and t]hese observations weigh against a finding that [the inmate's] medical conditions present extraordinary and compelling reasons for a reduction of his sentence"); *United States v. Pangelinan*, No. 17-483, 2020 U.S. Dist. LEXIS 121710, at *4-5 (E.D. Pa. July 9, 2020) (denying the motion for compassionate

release where there was no evidence that the prisoner's medical conditions were not being appropriately managed by the prison).

Although there have unfortunately been two COVID-19 outbreaks at FCI- Fort Dix, each occurred before vaccinations were available and the BOP responded to each outbreak under their action plan. *Cf. United States v. Staats*, No. 17-461-1, 2020 U.S. Dist. LEXIS 219946, at *13 (E.D. Pa. Nov. 24, 2020) ("Simply put, Fort Dix has shown that it cannot contain the virus."), with *United States v. Phillips*, No. 09-718, 2020 U.S. Dist. LEXIS 155638, at *10-11 (E.D. Pa. Aug. 27, 2020) ("The efforts made by the BOP at FCI Fort Dix have proven successful."). At this time, there are currently only 2 positive inmates at FCI- Fort Dix, which has an inmate population of 2,646, and 1,796 inmates that have recovered. *See* https://www.bop.gov/coronavirus/index.jsp (last visited May 10, 2021). Full vaccinations have been given to 247 staff members and 1,480 inmates at FCI- Fort Dix. *See id.* "The combination of vaccinated staff and inmates, plus those who have recovered from a prior COVID-19 infection, mitigates the risk of community spread of the virus and therefore reduces the risk to [an inmate]." *United States v. Holder*, No. 2:07-cr-00541-JDW, 2021 U.S. Dist. LEXIS 76481, at *7-8 (E.D. Pa. Apr. 21, 2021) (reasoning that in denying compassionate release, courts have emphasized the impact of the BOP's increased distribution of vaccines, the facility's current infection status, and whether an inmate's conditions are under control).

For all these reasons, Abreu has not presented an extraordinary and compelling reason to warrant a reduction in sentence.[11]

---

[11]  If an inmate fails to show that his medical conditions are sufficiently severe to present an extraordinary and compelling reason for compassionate release, "it is not necessary for the Court to advance to the next step of the § 3582(c)(1)(A)(i) inquiry by assessing the application of the § 3553(a) factors and possible danger to the community imposed." *Coleman*, 2020 U.S. Dist. LEXIS 189069, at *14-15 (denying the inmate's motion for compassionate release, without

### B. A reduction in sentence is not warranted because Abreu presents a danger to the community if released.

Abreu asserts that the BOP has graded him with a Minimum-Security Classification and according to the BOP PATTERN Risk Assessment system he scores "Low, or the least likely to recidivate." *See* Mot. 2. The Government states, however, that because the crime involved Abreu's attempt to distribute eleven kilograms of cocaine and his possession of $700,000 in drug proceeds from the sale of cocaine previously distributed, he presents a significant danger to the community. *See* Resp. 17.

The instant offense involved large amounts of cocaine imported from Mexico to be delivered to drug dealers in New Jersey, which Abreu facilitated by collecting money from the drug sales and smuggling it back to Mexico, was serious and posed a danger to the community. *See United States v. Munford*, No. 15-376-7, 2021 U.S. Dist. LEXIS 5423, at *12-13 (E.D. Pa. Jan. 12, 2021) (determining that "it is clear on an objective basis that [the defendant] still continues to present a danger to the community" where he had played a key role in a drug trafficking organization by conspiring to distribute a substantial amount of cocaine and marijuana and to launder money). While the instant offense was not violent, Abreu has a prior conviction for recklessly endangering another person where he had a verbal altercation with his neighbor, pulled out a firearm, and fired two shots through the fence, one of which went through the neighbor's pool in which three family members were swimming. He was sentenced to a

---

considering danger and the § 3553 factors, because the inmate's medical conditions of cancer, a bad heart, HIV, asthma, and hypertension did not present extraordinary and compelling reasons for compassionate release); *Hight*, 488 F. Supp. 3d 184 (finding no need to consider the sentencing factors because the inmate failed to present extraordinary and compelling reasons justifying his immediate release). Nevertheless, this Court briefly addresses whether Abreu is a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g) and the sentencing factors in 18 U.S.C. § 3553(a)).

short term of incarceration and was still on supervision when he engaged in the instant offenses. Abreu was not deterred by a prior term of incarceration or his ongoing supervision, which shows that he presents a danger to the safety of any other person or to the community if released. *See United States v. Irizzary*, No. 14-652-13, 2021 U.S. Dist. LEXIS 35179, at \*25 (E.D. Pa. Feb. 25, 2021) (concluding that the defendant, who was serving a sentence for his role in a drug-trafficking organization and was on parole at the time he committed his offense, presented a danger to others and the community if released early); *United States v. Rodrequis Council*, No. 4:18-CR-00219, 2020 U.S. Dist. LEXIS 158806, at \*13 (M.D. Pa. Sep. 1, 2020) (denying compassionate release because the defendant, whose criminal conduct has been consistent and dangerous, has not been deterred from prior sentences and presents a danger to the community if released from confinement).

Therefore, Abreu's danger to the community, as provided for in 18 U.S.C. § 3142(g), prevents his release.

### C. The factors set forth in 18 U.S.C. § 3553(a) do not support a reduction in Abreu's sentence.

Abreu contends that although his crime was serious, it was non-violent. *See* Mot. 2. He further suggests that the Court could impose a condition of house arrest during a term of supervised release, which would be a form of punishment. *See id.* The Government asserts, on the other hand, that Abreu fails to demonstrate how his release reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. *See* Resp. 17 (citing 18 U.S.C. § 3553(a)(2)(A)). It argues that given the nature of the offense, the managed medical conditions, and the amount of time remaining on Abreu's sentence, release is not appropriate under the 3553 factors. *See id.*

For the reasons set forth in the previous section, releasing Abreu would not afford adequate deterrence to criminal conduct or protect the public from further crimes. *See* 18 U.S.C. §§ 3553(a)(2)(B)-(C). Also, the nature and circumstances of the offense, which occurred over several months and involved approximately eleven kilograms of cocaine and $700,000 in drug proceeds being shipped between New Jersey and Mexico, and the history and characteristics of Abreu, including the fact that he was on parole for a violent crime at the time of the offense, also weigh against his release. *See United States v. Moore*, No. 08-730, 2021 U.S. Dist. LEXIS 9255, at *9 (E.D. Pa. Jan. 19, 2021) (concluding that the nature and circumstances of the offense and his history and characteristics weighed against granting compassionate release where he was convicted of attempting to purchase $165,000 in cocaine).

Given that Abreu's sentence was within the middle of the Sentencing Guidelines range and at the statutory mandatory minimum, reducing the sentence would not reflect the need to avoid unwarranted sentence disparities. *See* 18 U.S.C. § 3553(a)(6); *United States v. Robinson*, No. 15-496, 2020 U.S. Dist. LEXIS 225546, at *5-9 (E.D. Pa. Dec. 2, 2020) (denying compassionate release to a 38-year-old inmate suffering from obesity, myopia, and prediabetes because his medical conditions were being properly managed by the BOP and because granting release after 57 months of a 120-month sentence would fail to reflect the seriousness of distributing large quantities of PCP and would run afoul of Section 3553(a)(6)'s admonition to avoid unwarranted sentence disparities). Furthermore, releasing Abreu after having served less than half of his sentence "would fail to promote respect for the law, provide just punishment for his actions or reflect the seriousness of his crimes." *See* 18 U.S.C. § 3553(a)(2); *United States v. Maldonado*, No. 17-138, 2021 U.S. Dist. LEXIS 8112, at *10 (E.D. Pa. Jan. 15, 2021) (determining that where the inmate had served less than half of his sentence, release would not

reflect the seriousness of the offense, promote respect for the law, or provide just punishment pursuant to 18 U.S.C. § 3553(a)(2)(A)).

The factors in § 3553 therefore do not support a sentence reduction.

## V. CONCLUSION

Abreu's medical conditions are not sufficiently serious to provide an extraordinary and compelling reason for his release. This alone dictates that the motion for compassionate relief pursuant to 18 U.S.C. § 3582(c)(1)(A) be denied. Nevertheless, the Court has also considered whether Abreu presents a danger to the community if released and whether a reduction is consistent with the factors in 18 U.S.C. § 3553(a). In light of the serious nature of the drug offense, as well as Abreu's prior offense and the fact that he was on parole at the time of the offense, he presents a danger to the community if released. For all these reasons and those more fully discussed herein, releasing Abreu after having completed less than half his sentence is not consistent with 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission. The motion for compassionate relief pursuant to 18 U.S.C. § 3582(c)(1)(A) is therefore denied.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge